**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRONX PARENT HOUSING NETWORK, INC., | Civil Action No. |
| Plaintiff, | **COMPLAINT** |
| -against- | **JURY TRIAL DEMANDED** |
| RSUI INDEMNITY COMPANY, | |
| Defendant. | |

The Plaintiff, Bronx Parent Housing Network, Inc. ("BPHN"), as and for its Complaint against the Defendant, RSUI Indemnity Company ("RSUI"), hereby states the following upon information and belief:

**INTRODUCTION**

1.      The Plaintiff BPHN is a nonprofit organization that provides temporary housing, social services, and other support to low-income and moderate-income individuals and families experiencing homeless and other social challenges in New York City.

2.      The Defendant RSUI is a wholly-owned property and casualty insurance company subsidiary of the Alleghany Corporation.

3.      One of the products the Defendant RSUI sells is its Non-Profit Organization Management Liability Policy.  As the name suggests, this a management liability policy that targets nonprofit organizations, such as the Plaintiff BPHN.

4.      Accordingly, in November of 2020, the Plaintiff BPHN purchased a management liability insurance policy from the Defendant RSUI.

5.     Management liability insurance offers protection to the organization and its thought leaders who are entrusted to make difficult decisions within their organization.  Such decisions include determinations regarding governance, finance, benefits, and management activities, which can expose the organization to liability and also expose the decision-makers to personal liability.

6.     The management liability insurance policy purchased by the Plaintiff BPHN is regulated by New York Department of Financial Services ("NYDFS").  Notwithstanding, the management liability insurance policy purchased by the Plaintiff BPHN from the Defendant RSUI is not compliant with New York's law and regulations.

7.     The management liability insurance policy purchased by the Plaintiff BPHN from the Defendant RSUI provides directors and officers liability coverage ("D&O Coverage"), employment practices liability coverage ("EPLI Coverage") and fiduciary liability coverage ("FID Coverage").

8.     The Defendant RSUI has improperly denied the Plaintiff BPHN the benefits of the terms of the Policy and the Plaintiff BPHN has not received the benefits of the Policy it purchased.  As a result, the Plaintiff BPHN has been forced to spend, to date, over $300,000.00 of its own funds in defending matters insured under the Policy.

9.     The Defendant RSUI has failed in its obligation to provide the insurance coverage purchased by the Plaintiff BPHN and required by New York law.  Specifically:

A.     The Defendant RSUI wrongfully denied, and continues to deny, the Plaintiff BPHN with the defense and indemnity D&O Coverage it is entitled to that arises out of a Grand Jury Subpoena issued by the United

States District Attorney's Office for the Southern District of New York, dated February 7, 2021 (the "Subpoena");

B.      The Defendant RSUI wrongfully denied, and continues to deny, the Plaintiff BPHN with the defense and indemnity EPLI Coverage it is entitled to that arises out of a suit entitled Qiana Flynn v. BPHN, et al. filed in the United States District Court for the Southern District of New York, Civil Action No. 1:21-cv-2871-NRB (Filed March 22, 2021);

C.      The Defendant RSUI wrongfully denied, and continues to deny, the Plaintiff BPHN with the defense and indemnity EPLI Coverage it is entitled to that arises out of a suit entitled Shawon C. Taylor v. BPHN, et al. filed in the United States District Court for the Southern District of New York, Civil Action No. 1:21-cv-04890-PGG (Filed June 2, 2021);

D.      The Defendant RSUI wrongfully denied, and continues to deny, the Plaintiff BPHN with the defense and indemnity EPLI Coverage it is entitled to that arises out of a suit entitled Diamond Chavannes v. BPHN, et al. in the United States District Court for the Southern District of New York, Civil Action No. 1:21-cv-05060-JGK (Filed June 10, 2021); and

E.      The Defendant RSUI wrongfully denied, and continues to deny, the Plaintiff BPHN with the defense and indemnity EPLI Coverage it is entitled to that arises out of a suit entitled Theresa Britton v. Bronx Parent Housing Network, et al. filed in the United States District Court for the Southern District of New York, Civil Action No. 1:21-cv-07079-JPO (Filed August 23, 2021); and

F.      The Defendant RSUI wrongfully denied, and continues to deny, the Plaintiff BPHN with the defense and indemnity EPLI Coverage it is entitled to that arises out of a suit entitled Prell McDonald v. Bronx Parent Housing Network, et al. filed in the Supreme Court of the State of New York, County of Bronx, Index No. 814697-2021E (Filed October 28, 2021); and

G.      The Policy contains violations of New York law that are detrimental to the Plaintiff BPHN and that the Defendant RSUI has refused, and continues to refuse, to correct;

10.     As a result of the actions of the Defendant RSUI, the Plaintiff BPHN has been forced to expend in excess of $300,000.00 of its own funds, which are intended to support its programs and services, in support of persons and families experiencing homelessness, to defend Claims insured under the Policy.

**JURISDICTION AND VENUE**

11.     The Plaintiff BPHN is a non-profit corporation duly organized pursuant to the laws of the State of New York, is a citizen and resident of New York, and has a principal place of business at 488 E. 164th Street, Bronx, New York, 10456.

12.     The Defendant RSUI is a corporation or other business entity duly organized pursuant to the laws of the State of Georgia or another state within the United States of America, with a principal place of business at 945 E. Paces Ferry Road, Suite 1800, Atlanta, Georgia, 30326, and is licensed and admitted to write insurance policies and conduct the business of insurance within the State of New York.

13.     The matter in controversy exceeds $75,000.00.

14.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 based on complete diversity of the parties and an amount in controversy exceeding $75,000.00, exclusive of interest and costs.

15.     Venue within the Southern District of New York is proper pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this District.

## THE INSURANCE POLICY

16.     As aforesaid, the Plaintiff BPHN purchased from the Defendant RSUI a management liability insurance policy, designated as policy number PP690462, from the Defendant RSUI.

17.     Policy number PP690462 provided Plaintiff BPHN with $2,000,000 of D&O Coverage ($1,000,000 of which applies solely to defense coverage), $1,000,000 of EPLI Coverage, and $1,000,000 of FID Coverage.

18.     The Policy provides insurance to the Plaintiff BPHN, on a claims-made basis, from the period beginning on November 13, 2020 and ending on November 13, 2022.

19.     The Plaintiff BPHN complied with all of its obligations under the policy, including the payment all premiums due.

## THE UNDERLYING CLAIMS

20.     On or about February 7, 2021, the Plaintiff BPHN was served with a subpoena by the Unites States Attorney's Office for the Southern District of New York (the "Subpoena"). The Subpoena required certain information within the possession of the Plaintiff BPHN to be produced in connection with alleged violations of 18 U.S.C. §1341 (fraud and swindling), 18 U.S.C. §1343 (fraud by wire, radio, or television), 18 U.S.C. §1346 (scheme or artifice to default

and swindling), 18 U.S.C. §1349 (mail fraud), 18 U.S.C. §1956 (laundering of monetary instruments), 18 U.S.C. §1957 (engaging in monetary transactions in property derived from specified unlawful activity), and sought communications sent to and from Victor Rivera, as well as Victor Rivera's personnel file.

21.     On or about March 22, 2021, Qiana Flynn filed a lawsuit against the Plaintiff BPHN, in the United States District Court for the Southern District of New York, under Civil Action No. 1:21-cv-2871-NRB, alleging that the Plaintiff BPHN and Victor Rivera were liable for, among other things, employment discrimination, improper termination, and a hostile work environment because of certain acts of Victor Rivera.

22.     On or about June 2, 2021, Shawon C. Taylor filed a lawsuit against the Plaintiff BPHN, in the United States District Court for the Southern District of New York, under Civil Action No. 1:21-cv-04890-PGG alleging that the Plaintiff BPHN and Victor Rivera were liable for, among other things, employment discrimination, improper termination, and a hostile work environment because of certain acts of Victor Rivera.

23.     On or about June 10, 2021, Diamond Chavannes filed a lawsuit against the Plaintiff BPHN in the United States District Court for the Southern District of New York, under Civil Action No. 1:21-cv-05060-JGK, alleging that the Plaintiff BPHN, Victor Rivera, and several other BPHN former employees who reported to Victor Rivera were liable for, among other things, employment discrimination, improper termination, and a hostile work environment as a result of certain acts of Victor Rivera and several other BPHN former employees who reported to Victor Rivera.

24.     On or about August 23, 2021, Theresa Britton filed a lawsuit against the Plaintiff BPHN in the United States District Court for the Southern District of New York, under Civil

Action No. 1:21-cv-07079-JPO, alleging that BPHN and Victor Rivera were liable for, among other things, employment discrimination, improper termination, and a hostile work environment because of certain acts of Victor Rivera.

25.     On or about October 28, 2021, Prell McDonald filed a lawsuit against the Plaintiff BPHN in the Supreme Court of the State of New York, Bronx County, under Index No. 814697/2021E, alleging that the Plaintiff BPHN and Victor Rivera were liable for, among other things, employment discrimination, improper termination, and a hostile work environment because of certain acts of Victor Rivera.

26.     Each of the matters constituting the claim made by the Plaintiff BPHN are based on, arise out of, directly or indirectly result from, and are in consequence of, and involve the same or related facts, circumstances, situations, transactions or events, or the same or related series of facts, circumstances, situations, transactions or events, as they all arise out of the same conduct alleged to have been committed by the Plaintiff BPHN's  former chief executive officer, Victor Rivera, and several of the employees who reported to him.

### THE COVERAGE TO WHICH THE PLAINTIFF BPHN IS ENTITLED

*The Subpoena*

27.     Upon service of the Subpoena, the Plaintiff BPHN timely tendered the Subpoena to the Defendant RSUI.

28.     By correspondence dated February 16, 2021, the Defendant RSUI, notified the Plaintiff BPHN that it would treat the Subpoena as a Regulatory Claim under the Regulatory Endorsement of the policy, which limits the coverage for claims to $250,000, after payment of a $250,000 retention.

29.     The Regulatory Coverage endorsement applicable to Policy Number PP690462

provides:

> 1.  Regulatory Claim shall mean:
>
>> (a) a written demand for monetary damages or non-monetary relief;
>> (b) a search warrant, subpoena, notice of investigation, or contact letter;
>> (c) a civil proceeding commenced by the service of a complaint or similar pleading;
>> (d) a criminal proceeding commenced by the return of an indictment or information;
>> (e) a civil administrative or civil regulatory proceeding commenced by the filing of a demand or notice of charges; or
>> (f) a qui tam action or a relator lawsuit commenced by the service of a complaint or similar pleading,
>
> brought by or on behalf of a federal, state or local governmental, regulatory or administrative *agency or entity against an Insured for a Regulatory Wrongful Act, including any appeal* therefrom.
>
> Regulatory Claim shall not include any customary or routine audit or reconciliation involving an Insured by any federal, state or local governmental, regulatory or administrative agency or entity.
>
> A Regulatory Claim will be deemed to have first been made when, with respect to any civil, criminal, or civil administrative or civil regulatory proceeding or qui tam action or relator lawsuit described in (c) - (f) above, such Regulatory Claim is commenced as set forth in this definition or, in the case of any written demand, search warrant, subpoena, notice of investigation, or contact letter described in (a) or (b) above, when such demand is first received by an Insured.
>
> 2. Regulatory Wrongful Act shall mean any actual or alleged violation by an Insured of the responsibilities, obligations or duties imposed by the Federal False Claims Act or any similar federal, state, or local statutory law or common law anywhere in the world, any federal, state, or local antikickback, self-referral or healthcare fraud and abuse law anywhere in the world, or amendments to or regulations promulgated under any such law; provided that a Regulatory Wrongful Act shall not include any actual or alleged Retaliation.

30.     An endorsement entitled "Exclusion – Sexual Misconduct and Child Abuse" to

Policy Number PP690462 provides:

> This endorsement modifies insurance provided under the following:
>
> NON-PROFIT ORGANIZATION MANAGEMENT LIABILITY POLICY PRIVATE COMPANY MANAGEMENT LIABILITY POLICY

The following is added to SECTION IV. – EXCLUSIONS, of the Directors and Officers Liability Coverage Section and the Employment Practices Liability Coverage Section:

The Insurer shall not be liable to make any payment for Loss arising out of or in connection with any Claim (including but not limited to any derivative or representative class actions) made against any Insured alleging, arising out of, based upon or attributable to or in any way involving, directly or indirectly, any Sexual Misconduct, child abuse or neglect, including but not limited to the employment, supervision, reporting to the proper authorities, failure to so report or retention of any person.

Sexual Misconduct means any licentious, immoral or sexual behavior, sexual abuse, sexual assault or molestation or any sexual act against any individual.

All other terms and conditions of this policy remain unchanged.

31.     The Directors and Officer Liability Coverage Section of Policy Number PP690462 provides:

Section I – Insuring Agreements

Directors and Officers Liability

A. With the Insured Person, that if a Claim for a Wrongful Act is first made against any Insured Person during the Policy Period and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance in the Common Policy Terms and Conditions of this policy, the Insurer will pay on behalf of such Insured Person all Loss such Insured Person is legally obligated to pay, except and to the extent that the Insured Organization is required or permitted to indemnify such Insured Person for such Loss.

B. With the Insured Organization, that if a Claim for a Wrongful Act is first made against any Insured Person during the Policy Period and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance in the Common Policy Terms and Conditions of this policy, the Insurer will pay on behalf of the Insured Organization all Loss for which the Insured Organization is required or permitted to indemnify the Insured Person.

C. With the Insured Organization, that if a Claim for a Wrongful Act is first made against the Insured Organization during the Policy Period and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance in the Common Policy Terms and Conditions of this policy, the Insurer will pay on behalf of the Insured Organization all Loss the Insured Organization is legally obligated to pay.

and

Section III. – definitions

> A.  Claim, either in the singular or the plural, means:
>  1.  A written demand for monetary or non-monetary relief;
>  2.  A civil, criminal, administrative, regulatory or arbitration proceeding, or arbitration demand for monetary or non-monetary relief which is commenced by:
>   a.  Receipt or service of a complaint or similar pleading;
>   b.  Return of an indictment or filing of information; or
>   c.  Receipt of a notice of charges;
>  3.  A written request to an Insured to toll or waive a statute of limitations regarding a potential Claim, commenced by the receipt of such request by the Insured.
>
> …
>
> G.  Wrongful Act means any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty, or Personal Injury Wrongful Act, by:
>  1.  An Insured Person while acting in his or her capacity as such and on behalf of the Insured Organization or any matter claimed against them solely by reason of their status as an Insured Person; or
>  2.  The Insured Organization.
>
> …

32.  The Employment Practices Liability Coverage Section of Policy Number PP690462 also provides:

> Section I. – Insuring Agreements
> …
> A.  Employment Practices Liability
>
> The Insurer shall pay Loss up to the Limit of Liability applicable to this Coverage Section on behalf of the Insured in connection with any Employment Practices Claim first made against any Insured during the Policy Period and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance in the Common Policy Terms and Conditions of this policy.
>
> B.  Third Party Liability Coverage
>
> The Insurer shall pay for Loss up to the Limit of Liability applicable to this Coverage Section arising out of orin connection with any Claim for Third Party Discrimination and/or Third Party Harassment first made against any Insured during the Policy Period and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance in the Common Policy Terms and Conditions of this policy.
> …
> Section III – Definitions
> …

I.  Third Party means any person(s) with whom and Insured Interacts

J.  Third Party Discrimination means any discrimination by an Insured in his or her capacity as such against a Third Party based on such Third Party's race, color, creed, religion, age, gender, national origin, sexual orientation or preference, disability, pregnancy or other protected status that is protected pursuant to any applicable federal, state or local statute or ordinance.

K.  Third Party Harassment means any type of sexual or gender harassment as well as racial, religious, sexual orientation, pregnancy, disability, age, or national origin-based harassment that is by an Insured to a Third Party.
…

33.     The Common Policy Terms and Conditions of Policy Number PP690462

provides:

Section III – Definitions
…
B.      Claim shall have the meaning set forth in each applicable Coverage Section or any applicable endorsements attached to this policy.
…
Section V – Conditions
…
B.      Limit of Liability; Retention; Payment of Loss
…
        5.      In the event that a Claim implicates more than one Retention amount, then the largest of the applicable Retention amounts shall be applied, but in no event shall more than one Retention amount be applied to a Claim.

34.     The Subpoena is not within the scope of the Regulatory Coverage Endorsement because it does not allege a Regulatory Wrongful Act as that term is defined in the Regulatory Coverage endorsement.  Specifically, it does not allege an "actual or alleged violation by an Insured of the responsibilities, obligations or duties imposed by the Federal False Claims Act or any similar federal, state, or local statutory law or common law anywhere in the world, any federal, state, or local antikickback, self-referral or healthcare fraud and abuse law anywhere in the world, or amendments to or regulations promulgated under any such law.

35.     The Subpoena is not within the scope of the Sexual Misconduct and Child Abuse exclusion because the exclusion specifically provides that "All other terms and conditions of this

policy remain unchanged," the exclusion does not change the coverages provided under the Directors and Officers Section, and thus, the exclusion does not apply.

36.     The highest applicable Retention clause of the contract does not apply to a "Regulatory Claim" because the clause only applies to a "Claim" and not a "Regulatory Claim," and both the terms "Claim" and "Regulatory Claim" are specifically defined by the policy.

37.     The Subpoena is within the scope of the Directors and Officer Liability Coverage Section because the Subpoena falls within the definition of a Claim, and is a loss that the Defendant RSUI, is required to pay under the terms of the insurance policy.  Specifically, the Plaintiff BPHN is entitled to a $1,000.000.00 limit of liability for a defense and indemnity, plus an additional $1,000,000.00 limit of liability for defense costs, subject to a single $25,000.00 retention.

38.     In the alternative, if the Subpoena is not within the scope of the Directors and Officer Liability Coverage Section, it is within the scope of the Employment Practices Liability Coverage Section, and because the Sexual Misconduct and Child Abuse exclusion specifically provides that "All other terms and conditions of this policy remain unchanged," the exclusion does not change the coverages provided under the Employment Practices Liability Coverage Section, and thus, the exclusion does not apply.  Consequently,  if the Subpoena is not within the scope of the Directors and Officer Liability Coverage Section, it is within the scope of the Employment Practices Liability Coverage Section, and the Plaintiff BPHN is entitled to a $1,000.000.00 limit of liability for a defense and indemnity, subject to a single $75,000.00 retention aggregated with the claims underlying the five (5) civil lawsuits filed.

*The Civil Lawsuits*

39.     The Defendant RSUI, has notified the Plaintiff BPHN, that each of the five (5) civil lawsuits referenced above constitutes an individual Claim under the terms of Policy Number PP690462.

40.     The Common Policy Terms and Conditions of Policy Number PP690462 provides:

Section V – Conditions
…
B.      Limit of Liability; Retention; Payment of Loss
…
4.  All Claims based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions or events, or the same or related series of facts, circumstances, situations, transactions or events, shall be deemed to be a single Claim for all purposes under this policy, shall be subject to the Retention stated in Item 3. of the Declarations Page for each applicable Coverage Section, or other applicable Retention, and shall be deemed first made when the earliest of such Claims is first made, regardless of whether such date is before or during the Policy Period.

5. In the event that a Claim implicates more than one Retention amount, then the largest of the applicable Retention amounts shall be applied, but in no event shall more than one Retention amount be applied to a Claim.

41.     The five (5) civil lawsuits referenced above involve the same or related facts, circumstances, situations, transactions or events, and/or the same or related series of facts, circumstances, situations, transactions or events, and also involve the same underlying circumstance and have a sufficient factual nexus to be considered a single claim.

42.     Because the five (5) civil lawsuits referenced above constitute a single claim under the terms of the policy, the lawsuits are subject to a single $1,000,000.00 limit of liability, as well as a single $75,000.00 Retention.

*Non-Compliance with New York law*

43.     The Defendant RSUI is an insurance carrier admitted and licensed to write insurance policies within the State of New York.

44.     The Defendant RSUI is licensed as an insurance company to write New York Free Trade Zone Policies, which do not require filing and approval the New York State Department of Financial Services.

45.     An endorsement entitled "New York – Amendatory" of Policy Number PP690462 contains a direct action clause, which provides:

> Section V. – Conditions
> …
> I.  No Action Against Insurer
>
> No action may be taken against the **Insurer** unless, as a condition precedent thereto, there has been full compliance with all of the terms and conditions of this policy and until the amount of any **Insured's** obligation to pay **Loss** has been finally determined either by judgment against such **Insured** after adjudicatory proceedings, or written agreement of the **Insured**, the claimant and the **Insurer**.

46.     New York Insurance Law §3420(a)(2) provides:

> (a) No policy or contract insuring against liability for injury to person, except as provided in subsection (g) of this section, or against liability for injury to, or destruction of, property shall be issued or delivered in this state, unless it contains in substance the following provisions or provisions that are equally or more favorable to the insured and to judgment creditors so far as such provisions relate to judgment creditors: ….
>
> (2) A provision that in case judgment against the insured or the insured's personal representative in an action brought to recover damages for injury sustained or loss or damage occasioned during the life of the policy or contract shall remain unsatisfied at the expiration of thirty days from the serving of notice of entry of judgment upon the attorney for the insured, or upon the insured, and upon the insurer, then an action may, except during a stay or limited stay of execution against the insured on such judgment, be maintained against the insurer under the terms of the policy or contract for the amount of such judgment not exceeding the amount of the applicable limit of coverage under such policy or contract.

47.     The direct action clause of Policy Number PP690462 does not comply with the statutory requirement of New York Insurance Law §3420(a)(2), and the Plaintiff BPHN is entitled to reformation of the policy contract to include the language required by New York Insurance Law §3420(a)(2).

48. New York Insurance Law §3420(a)(5) provides:

(a) No policy or contract insuring against liability for injury to person, except as provided in subsection (g) of this section, or against liability for injury to, or destruction of, property shall be issued or delivered in this state, unless it contains in substance the following provisions or provisions that are equally or more favorable to the insured and to judgment creditors so far as such provisions relate to judgment creditors: ….

(5) A provision that failure to give any notice required to be given by such policy within the time prescribed therein shall not invalidate any claim made by the insured, injured person or any other claimant, unless the failure to provide timely notice has prejudiced the insurer, except as provided in paragraph four of this subsection. With respect to a claims-made policy, however, the policy may provide that the claim shall be made during the policy period, any renewal thereof, or any extended reporting period, except as provided in paragraph four of this subsection. As used in this paragraph, the terms "claims-made policy" and "extended reporting period" shall have their respective meanings as provided in a regulation promulgated by the superintendent.

49. Policy Number PP690462 does not contain the late notice clause required by New York Insurance Law §3420(a)(5), and the Plaintiff BPHN is entitled to reformation of the policy contract to include the language required by New York Insurance Law §3420(a)(5).

50. The Common Policy Terms and Conditions of Policy Number PP690462 provides:

---

Section II – Coverage Extensions
…
B.  Extended Reporting Period
…
The Limit of Liability available under the Extended Reporting Period is part of and not in addition to the Limit of Liability stated in Item 4. of the Declarations Page.

---

51. However, 11 N.Y.C.R.R. 73.3 requires a Directors and Officers Liability Insurance to provide an extended reporting period, and specifically provides, in pertinent part as to Directors and Officers Liability Insurance for not-for-profit organizations:

…where a claims-made relationship has continued for at least three years and the policy contains an annual aggregate liability limit, the aggregate liability limit, if

any, for the extended reporting period coverage shall be at least equal to 100 percent of such policy's annual aggregate limit.

52.     The claims-made relationship between the Plaintiff BPHN and the Defendant RSUI has continued for at least three (3) years.

53.     Policy Number PP690462 does not provide does not provide a limit for the extended reporting period coverage.

54.     Policy Number PP690462 is not in compliance with 11 N.Y.C.R.R. 73.3 because it provides a limit of liability for the extended reporting period which is "part of and not in addition to the Limit of Liability stated in Item 4. of the Declarations Page" and not "equal to 100 percent of such policy's annual aggregate limit," and therefore, the Plaintiff BPHN is entitled to reformation of the policy contract to include language required by 11 N.Y.C.R.R. 73.3.

*The Extended Reporting Period Premium*

55.     A Disclosure Supplement to Policy Number PP690462, entitled "New York Regulation 121 Disclosure Supplement" provides, in pertinent part:

> If You are a "not for profit organization," You may purchase an Optional Discovery Period of three (3) years for an additional premium charge of two hundred percent (200%) of the expiring policy Premium.

56.     An endorsement to Policy Number PP690462, entitled "Three (3) year bilateral extended reporting period" provides, in pertinent part:

> Alternatively, the Insured Organization shall have the right to elect an Extended Reporting Period greater than the three hundred and sixty five (365) Days referenced above. The following alternative Extended Reporting Period options are as follows:
>
> | Extended Reporting | Period Additional Premium |
> |---|---|
> | 2 Years | 125% of Full Annual Premium |
> | 3 Years | 150% of Full Annual Premium |

57.     Policy Number PP690462 is ambiguous because the Disclosure Supplement entitled "New York Regulation 121 Disclosure Supplement" is inconsistent with the

endorsement entitled "Three (3) year bilateral extended reporting period" in that they are both part of the policy contract, and provide inconsistent premiums for tail coverage.

58.     Ambiguities in an insurance policy contract are resolved in favor of the insured, and therefore, the Plaintiff BPHN is entitled to judgment declaring that it is entitled to purchase a three (3) year Extended Reporting Period for 150% of the annual premium of Policy Number PP690462.

59.     An endorsement to Policy Number PP690462, entitled "New York Changes – Extended Reporting Period" provides, in pertinent part:

> The required additional premium for the Optional Extended Reporting Period shall be fully earned by the Insurer at the inception of the Optional Extended Reporting Period.

60.     The Common Policy Terms and Conditions of Policy Number PP690462 provides:

> Section V. – Conditions
> …
> G.  Merger, Consolidation, or Acquisition
> …
> 3.  If during the Policy Period:
>     a. The Insured Organization shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or
>     b. Any person or entity or group of persons or entities acting in concert shall acquire an amount of more than fifty percent (50%) of the voting power for the election of directors of the Insured Organization;
>     (either of the above events in 3. a. or b. are hereunder referred to as the "Transaction" ), then this policy shall continue in full force and effect for any Wrongful Act occurring prior to the effective time of the Transaction, but there shall be no coverage afforded by any provision of this policy for any actual or alleged Wrongful Act occurring after the effective time of the Transaction. This policy may not be cancelled after the effective time of the Transaction and the premium for this policy shall be deemed fully earned as of such time.

61.     New York Insurance Law §2303 provides:

> Rates shall not be excessive, inadequate, unfairly discriminatory, destructive of competition or detrimental to the solvency of insurers. In determining whether rates comply with the foregoing standards, the superintendent shall include all

income earned by such insurer and any insurer controlling or controlled by such insurer or under common control by or with such insurer on all its investments of any kind and wherever located. The superintendent shall further determine whether any component of such rates represent an effort on the part of the insurer to recover losses incurred in another state due to any referendum, law or regulation which requires a general reduction in rates for the kinds of insurance described in section two thousand three hundred two of this article. Such a finding shall be deemed unfairly discriminatory for the purposes of this article.

62.     The provisions of the endorsement entitled "New York Changes – Extended Reporting Period," as well as the provisions of the Common Policy Terms and Conditions which render the policy premium fully earned at the inception, and/or at any point prior to the conclusion of the policy term are excessive, inadequate, and/or unfairly discriminatory in violation of New York Insurance Law §2303.

63.     The Plaintiff BPHN is entitled to a judgment declaring any provisions of Policy Number PP690462 which render the policy premium fully earned at the inception, and/or at any point prior to the conclusion of the policy term are void and unenforceable.

**COUNT ONE**
**BREACH OF CONTRACT**

64.     The Plaintiff BPHN repeats, re-alleges, and incorporates by reference each allegation in the preceding paragraphs as if set forth more fully herein.

65.     Policy Number PP690462 is a valid and enforceable insurance policy contract by which the Defendant RSUI provided insurance coverage to the Plaintiff BPHN

66.     The  Subpoena and the five (5) civil lawsuits commenced against the Plaintiff BPHN constitute a valid claim or valid claim(s) under the insurance policy contract, for which the Plaintiff is entitled to a defense and indemnity from the Defendant RSUI.

67.     The Defendant RSUI has breached the insurance policy contract by failing to provide the insurance coverage described above, which it is required to provide under the terms of the insurance policy contract.

68.     The Defendant RSUI has breached the insurance policy contract by failing to provide the insurance coverage described above, which it is required to provide in accordance with  New York law.

69.     As a result of the breach of the insurance policy contract by the Defendant RSUI the Plaintiff BPHN has suffered damages.

70.     The damages suffered by the Plaintiff BPHN are ongoing, and the amount of the damages suffered shall be determined at trial.

## COUNT TWO
### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

71.     The Plaintiff BPHN repeats, re-alleges, and incorporates by reference each allegation in the preceding paragraphs as if set forth more fully herein.

72.     The policy carries with it an implied covenant of good faith and fair dealing.

73.     Pursuant to the implied covenant of good faith and fair dealing, the Defendant RSUI is required to (a) deal with any claim or claim(s) presented expeditiously and fairly, (b) issue insurance policies in compliance with New York law, (c) only take positions on insurance coverage which comply with the plain meaning of the terms of the policy contract, as well as New York law and precedent, and (d) refrain from withholding defense costs to induce the Plaintiff BPHN to waive its bargained for contractual rights.

74.     The Defendant RSUI has beached the implied covenant of good faith and fair dealing by failing to (a) deal with any claim or claim(s) presented expeditiously and fairly, (b) issue insurance policies in compliance with New York law, (c) only take positions on insurance

coverage which comply with the plain meaning of the terms of the policy contract, as well as New York law and precedent, and (d) refrain from withholding defense costs to induce the Plaintiff BPHN to waive its bargained for contractual rights.

75.     As a result of the breach of the implied covenant of good faith and fair dealing by the Defendant RSUI, the Plaintiff BPHN has suffered damages.

76.     The damages suffered by the Plaintiff BPHN are ongoing, and the amount of the damages suffered shall be determined at trial.

77.     The conduct of the Defendant RSUI, is egregious, willful, and malicious, and thus, the Plaintiff BPHN is entitled to punitive damages.

**WHEREFORE,** the Plaintiff BPHN demands judgment against the Defendant RSUI:

1)     Declaring that the Defendant RSUI, must defend and indemnify the Plaintiff BPHN under Policy Number PP690462 in the Matter of the Grand Jury Subpoena as a D&O Claim, subject to a $25,000.00 retention, and not subject to the Regulatory Claim Provisions of the Policy, and not subject to the Highest Multiple-Claim Retention Provision; and

2)     Declaring that the Defendant RSUI must defend and indemnify the Plaintiff BPHN under Policy Number PP690462 in connection with the five (5) civil lawsuits filed against the Plaintiff BPHN as a single claim under the terms of the policy contract, subject to a single $75,000.00 retention; and

3)     Declaring that the Defendant RSUI must defend and indemnify the Plaintiff BPHN under Policy Number PP690462 in connection with the five (5) civil lawsuits filed against BPHN pursuant to the Third Party Employment Practices Liability Coverage part of the Insurance Contract, and that the Exclusion for

Sexual Misconduct and Child Abuse does not bar coverage; and

4)      Reforming Policy Number PP690462 to include statements required by New York Insurance Law §3420(a)(2), §3420(a)(4), §3420(a)(5), and 11 N.Y.C.R.R. 73.3(h); and

5)      Declaring any provisions of Policy Number PP690462 that render the policy premium fully earned at the inception, and/or at any point prior to the conclusion of the policy term are void and unenforceable; and

6)      Declaring that the Plaintiff BPHN may purchase a three (3) year Extended Reporting Period under Policy Number PP690462 for 150% of the Policy's annual premium; and

7)      for compensatory damages with pre-judgment interest; and

8)      for punitive damages; and

9)      for attorneys fees and costs of this action; and

10)     any other relief which is allowed by the insurance contract and/or is equitable, fair, and reasonable.

## JURY DEMAND

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of Federal Rules of Civil

Procedure.

Respectfully submitted,

s/ Andrea Kitzis Smith
Andrea Kitzis Smith, Esq.

Clemente Mueller P.A.
43 W. 43rd Street, Suite 156
New York, NY 10036-07424
(212) 425-5005
asmith@cm-legal.com
Attorney for Plaintiff
Bronx Parent Housing Network, Inc.

Dated:          January 19, 2022